**SETTLEMENT AGREEMENT AND RELEASE**

This Agreement and General Release (the "<u>Agreement</u>"), is entered into between Edwin Ramos ("Ramos"), Julio Batista III ("Batista"), Fazool Ramjohn ("Ramjohn"), and Richard Vargas ("Vargas," and each individually, an "Employee" and collectively, "Employees") and Parkchester Department of Public Safety LLC d/b/a Parkchester DPS LLC ("Parkchester DPS LLC" or "Employer").

WHEREAS, Employees are Plaintiffs in the matter of *Ramos, et al. v. Parkchester Department of Public Safety LLC d/b/a Parkchester DPS LLC,* Docket No. 1:16-cv-8649-JGK (S.D.N.Y.), (hereinafter, "the Action"), the Honorable John G. Koeltl, United States District Judge, presiding (hereinafter, "the Court'), arising under the Fair Labor Standards Act ("FLSA") and New York Labor Law;

WHEREAS, Employees have asserted various claims against Employer concerning payment of wages in the Action; and

WHEREAS, Employer denies Employees' material allegations; and

WHEREAS, Employees and Employer acknowledge the existence of a *bona fide* dispute concerning Employees' entitlement to the monies claimed; and

WHEREAS, each Employee has consulted with legal counsel of his choosing and, after consultation, acknowledges and agrees that the terms and conditions set forth herein represent a fair and reasonable compromise of his claims; and

WHEREAS, Employees and Employer have agreed to finally and fully settle claims that were or could have been asserted against the other upon the terms and conditions set forth herein;

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, it is agreed as follows:

1. <u>Release</u>.

    (A) In consideration of the promises and undertakings set forth in this Agreement, each Employee hereby unconditionally and irrevocably releases, waives, discharges and gives up any and all Wage Claims (as defined below) that he has or may have against Parkchester DPS, LLC, The Parkchester North Condominium, Parkchester South Condominium, Inc., Parkchester Preservation Management LLC, and each of their respective past and present successors, assigns, affiliated entities, and each of their respective past and present owners, unit owners, directors, officers, members, shareholders, governing boards (including without limitation the boards of managers of The Parkchester North Condominium and Parkchester South Condominium, Inc.), agents, managers, employees, insurers, and attorneys (together, "Releasees"), as of the date the Agreement is signed by each Employee.

(B) "Wage Claims" means any and all actions, charges, complaints, controversies, demands, causes of action, suits, rights, and/or claims whatsoever for debts, sums of money, consulting fees, wages, salary, commissions, bonuses, stock options, equity grants, severance pay, separation pay, vacation pay, sick pay, fees and costs, attorneys' fees, losses, penalties, or damages arising from or relating to anything that happened before each Employee signs this Agreement, whether based in contract, tort, constitutional, statutory or common law, federal, state, or local statute, order, law or regulation regarding all claims arising from or relating to each Employee's employment with Employer or the other Releasees, relating to wages and/or benefits under the Fair Labor Standards Act ("FLSA") and New York State Labor Law, including claims for breach of express or implied contract, breach of an implied covenant of good faith and fair dealing, breach of labor contract or collective bargaining agreement, violation of public policy, any claims for unpaid wages, minimum wages, overtime compensations, or bonuses, or any claim for attorneys' fees, liquidated damages, interest, or any other duty or obligation of any kind or description whether arising in law or equity, including all claims arising out of the Action that were or could have been asserted on behalf of any Employee.

2. Covenant Not to Sue. Subject to the limitations contained in this Agreement, no Employee shall commence any judicial or administrative action seeking money damages concerning any Wage Claim against any Releasee. Releasees shall be entitled to recover from Employees all reasonable attorneys' fees and costs incurred as a result of a breach of this Paragraph 2.

3. Limitations on Release/Covenant Not to Sue. Nothing in this Agreement is intended to (i) preclude a party from enforcing the terms of this Agreement, or (ii) preclude any Employee from filing, or participating in the investigation of, a charge of discrimination by a federal, state or local fair employment practice agency, provided such Employee shall not be entitled to any monetary damages in connection with any such charge.

4. Payment.

   (A) **Ramos:** As good consideration for Ramos' execution and delivery of this Agreement, Employer agrees to pay Ramos the total settlement amount of Thirty-Two Thousand Three Hundred Ninety-Six Dollars and Ninety Cents ($32,396.90), distributed as follows:

   i. Payable to Ramos, a gross settlement sum of Twenty-One Thousand Seven Hundred Fifteen Dollars and Seventy Eight Cents ($21,715.78), 50% of which ($10,857.89) shall be paid on one check and shall be subject to withholdings and reported on an IRS Form W-2, and the remaining 50% of which ($10,857.89) shall be paid on another check and which shall subject to no withholdings and reported on an IRS Form 1099; and

2

        ii.      To Borrelli & Associates, P.L.L.C., a gross sum of Ten Thousand Six Hundred Eighty-One Dollars and Twelve Cents ($10,681.12), representing payment solely for Ramos's attorneys' fees for Ramos's Wage Claims.

(B)    ***Batista***: As good consideration for Batista's execution and delivery of this Agreement, Employer agrees to pay Batista the total settlement amount of Sixty-Three Thousand Four Hundred Ninety-One Dollars and Ninety Cents ($63,491.90), distributed as follows:

        i.      Payable to Batista, a gross settlement sum of Forty-Two Thousand Two Hundred Eighty-Seven Dollars and Forty-Two Cents ($42,287.42), 50% of which ($21,143.71) shall be paid on one check subject to withholdings and reported on an IRS Form W-2, and the remaining 50% of which ($21,143.71) shall be paid on another check, subject to no withholdings and reported on an IRS Form 1099; and

        ii.      To Borrelli & Associates, P.L.L.C., a gross sum of Twenty-One Thousand Two Hundred Four Dollars and Forty-Eight Cents ($21,204.48), representing payment solely for Batista's attorneys' fees for Batista's Wage Claims.

(C)    ***Ramjohn***: As good consideration for Ramjohn's execution and delivery of this Agreement, Employer agrees to pay Ramjohn the total settlement amount of Eighty-Two Thousand Nine Hundred Ninety Dollars and Nine Cents ($82,990.09), distributed as follows:

        i.      Payable to Ramjohn, a gross settlement sum of Fifty Five Thousand Three Hundred Fifty-Seven Dollars and Fourteen Cents ($55,357.14), 50% of which ($27,678.57) shall be paid on one check subject to withholdings and reported on an IRS Form W-2, and the remaining 50% of which ($27,678.57) shall be paid on another check, subject to no withholdings and reported on an IRS Form 1099; and

        ii.      To Borrelli & Associates, P.L.L.C., a gross sum of Twenty-Seven Thousand Six Hundred Thirty-Two Dollars and Ninety-Five Cents ($27,632.95), representing payment solely for Ramjohn's attorneys' fees for Ramjohn's Wage Claims.

(D)    ***Vargas***: As good consideration for Vargas' execution and delivery of this Agreement, Employer agrees to pay Vargas the total settlement amount of Ninety-Nine Thousand Nine Hundred Ninety Dollars and Nineteen Cents ($99,990.19), distributed as follows:

        i.      Payable to Vargas, a gross settlement sum of Sixty-Six Thousand Seven Hundred Fifty-Two Dollars and Thirty-Eight cents

($66,752.38), 50% of which ($33,376.19) shall be paid on one check subject to withholdings and reported on an IRS Form W-2, and the remaining 50% of which ($33,376.19) shall be paid on another check, subject to no withholdings and reported on an IRS Form 1099; and

    ii. To Borrelli & Associates, P.L.L.C., a gross sum of Thirty-Three Thousand Two Hundred Thirty-Seven Dollars and Eighty-One Cents ($33,237.81), representing payment solely for Vargas's attorneys' fees for Vargas's Wage Claims.

(E) Payment shall be made within the later of: (1) thirty (30) days after Employee's execution and delivery of this Agreement and IRS Forms W-4 and W-9; or thirty (30) days after the Court approves this Agreement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

(F) All payments shall be delivered to Borrelli & Associates, P.L.L.C., Attention: Michael J. Borrelli, Esq., 910 Franklin Avenue, Suite 200, Garden City, New York 11530.

(G) Releasees make no representations or warranties regarding the tax status of or any tax issues relating to the payments provided for in this Paragraph 4. Employees acknowledge that they have not relied upon any representation, statement or omission made by Releasees, or by any of their agents, attorneys or representatives, concerning the taxability of any portion of the payments to be paid under this Agreement or otherwise. In the event that taxes are assessed against Employees as a result of the payments described in this Paragraph 4, with the exception of any such taxes withheld by Releasees pursuant to the W-2 portions of the payments described in Paragraph 4(A)-(D), above, Employees shall be solely responsible for the payment of such taxes, interest and/or penalties as may be assessed against them for federal, state and local income taxes and unemployment taxes and they shall and do hereby agree to indemnify and hold harmless Releasees for any claims arising from or relating to such taxes, interest and/or penalties.

(H) Employer's payment obligation under this Agreement shall be fully satisfied upon delivery of payment to Borrelli & Associates, P.L.L.C. ("Employee's counsel"). Employer shall bear no responsibility for further distribution of the settlement sums..

5. <u>Termination of Litigation</u>. The parties agree to work cooperatively to effectuate all steps necessary to terminate all pending litigation between them, including submission of this agreement for judicial approval of this Agreement and filing of a stipulation of dismissal and/or request for dismissal.

4

6. <u>Non-Disparagement</u>.

    (A)    No Employee shall publish or communicate to any Person any Disparaging remarks, comments or statements concerning any Releasee, or any individual employed by any Releasee.

    (B)    Employer shall not publish or communicate to any Person any Disparaging remarks, comments or statements concerning Employees. Employer agrees that, upon request by a prospective employer, Employer agrees to provide an Employee with a neutral reference, in which will confirm only an Employee's dates of employment, position(s) held, and will advise such prospective employer that is it Employer's policy to provide only this such information.

    (C)    "<u>Disparaging</u>" shall mean remarks, comments, statements, or communications (written or oral) that (i) reflect adversely on the business affairs or practices of the Person being remarked or commented upon, or (ii) impugn the character, honesty, integrity, morality, business acumen or abilities in connection with any aspect of the operation of business of the Person being remarked or commented upon.

    (D)    "<u>Person</u>" shall mean natural persons (including individuals employed by Employer or other Releasees), corporations, partnerships, sole proprietorships, unions, associations, federations or any other kind of entity.

    (E)    The terms of this Paragraph 7 are Employees' preference. Nothing in this Paragraph 7 shall preclude an Employee from a) initiating, testifying, assisting, complying with a subpoena from, or participating in any manner with an investigation conducted by a local, state or federal agency, subject to the terms of Paragraph 3 of this Agreement, or b) filing or disclosing facts necessary to receive unemployment insurance, Medicaid or other public benefits to which the Employee is entitled.

    (F)    Notwithstanding anything in this paragraph, Employees may permissibly discuss and/or testify the existence and terms and conditions of this Agreement, and may make truthful statements regarding Employees' experience when litigating their claims against the Defendant.

7. <u>Severability</u>. If any term, provision, covenant or restriction contained in this Agreement, or any part thereof, is held by a court of competent jurisdiction, or any foreign, federal, state, county or local government or any other governmental regulatory or administrative agency or authority or arbitration panel, to be invalid, void or unenforceable or against public policy for any reason, the remainder of the terms, provisions, covenants and restrictions in this Agreement shall remain in full force and effect.

8. <u>Governing Law</u>. This Agreement shall be governed by and enforced in accordance with the laws of the State of New York without regard to its conflicts of law

principles. Employees and Employer (i) agree that any lawsuit, proceeding or action with respect to this Agreement may be brought only in the courts of the State of New York, (ii) accept unconditionally, the exclusive jurisdiction of such courts, and (iii) irrevocably waive any objection, including, without limitation, any objection to the laying of venue based on the grounds of forum non conveniens, which Employees and Employer may now or hereafter have to the bringing of any lawsuit, proceeding or action in those jurisdictions.

9. Headings. The headings in this Agreement are included for convenience of reference only and shall not affect the interpretation of this Agreement.

10. Counterparts. This Agreement may be executed and delivered with facsimile or electronic signature and in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11. No Other Assurances. Employees acknowledge that in deciding to sign this Agreement, Employees have not relied on any promises or commitments, whether spoken or in writing, made to Employees by any Person, except for what is expressly stated in this Agreement. This Agreement constitutes the entire understanding and agreement between each Employee and Employer.

12. Opportunity for Review.

(A) Each Employee represents and warrants that he: (i) has had sufficient opportunity to consider this Agreement; (ii) has read this Agreement; (iii) understands all the terms and conditions hereof; (iv) is not incompetent or had a guardian, conservator or trustee appointed for Employee; (v) has entered into this Agreement of Employee's own free will and volition; (vi) has duly executed and delivered this Agreement; (vii) has had the opportunity to review this Agreement with counsel of Employee's choice or has chosen voluntarily not to do so; and (viii) understands that this Agreement is valid, binding and enforceable against the parties hereto in accordance with its terms.

(B) Each Employee has been offered at least twenty-one (21) calendar days to consider the terms of this Agreement and seven (7) calendar days from the date he signs to revoke it. An Employee may revoke only within seven (7) calendar days after the date on which the Employee signs ("Revocation Period"). Any such revocation may be made only by a letter signed by the Employee and delivered to and received by Employer no later than the end of the Revocation Period.

(C) If any Employee revokes this Agreement during the Revocation Period, this Agreement shall be void as to such Employee only. This Agreement shall be binding on all Employees who execute the Agreement and do not revoke it.

13. <u>No Admissions</u>. This Agreement shall not be construed as an admission of fact or liability by any party. This Agreement compromises disputed claims. This Agreement shall not be admissible in any proceeding as evidence of any fact or conclusion, except only that this Agreement may be introduced in a proceeding arising from a breach of the Agreement.

14. <u>Signatories' Representations</u>. The individuals affixing their signatures to this Agreement represent and warrant that they have the authority to enter into this Agreement on their own behalf and/or on behalf of the entities they represent.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUM SET FORTH IN THIS AGREEMENT, EMPLOYEES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND DISCUSSION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL WAGE CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

Agreed to and accepted by, on this __2__ day of __JANUARY__, __2020__

_____
Edwin Ramos

Agreed to and accepted by, on this _____ day of _____, _____

_____
Julio Batista III

Agreed to and accepted by, on this _____ day of _____, _____

_____
Fazool Ramjohn

13. <u>No Admissions</u>. This Agreement shall not be construed as an admission of fact or liability by any party. This Agreement compromises disputed claims. This Agreement shall not be admissible in any proceeding as evidence of any fact or conclusion, except only that this Agreement may be introduced in a proceeding arising from a breach of the Agreement.

14. <u>Signatories' Representations</u>. The individuals affixing their signatures to this Agreement represent and warrant that they have the authority to enter into this Agreement on their own behalf and/or on behalf of the entities they represent.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUM SET FORTH IN THIS AGREEMENT, EMPLOYEES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND DISCUSSION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL WAGE CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

Agreed to and accepted by, on this _____ day of _____, _____

_____
Edwin Ramos

Agreed to and accepted by, on this 2 day of JAN, 2020

_____
Julio Batista III

Agreed to and accepted by, on this _____ day of _____, _____

_____
Fazool Ramjohn

7



13. <u>No Admissions</u>. This Agreement shall not be construed as an admission of fact or liability by any party. This Agreement compromises disputed claims. This Agreement shall not be admissible in any proceeding as evidence of any fact or conclusion, except only that this Agreement may be introduced in a proceeding arising from a breach of the Agreement.

14. <u>Signatories' Representations</u>. The individuals affixing their signatures to this Agreement represent and warrant that they have the authority to enter into this Agreement on their own behalf and/or on behalf of the entities they represent.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUM SET FORTH IN THIS AGREEMENT, EMPLOYEES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND DISCUSSION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL WAGE CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

Agreed to and accepted by, on this _____ day of _____, _____

_____
Edwin Ramos

Agreed to and accepted by, on this _____ day of _____, _____

_____
Julio Batista III

Agreed to and accepted by, on this  2  day of January , 2020

_____
Fazool Ramjohn

7

Agreed to and accepted by, on this 31 day of DECEMBER, 2019

_____
Richard Vargas

Agreed to and accepted by, on this _____ day of _____, _____

_____
Parkchester DPS, LLC

By: _____

Name: JUAN R. TORRES

Title: CHAIRMAN

8